**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RUTH DIXON, ISHEA ANDERSON-RODRIGUEZ, ANDRE SMITH, MAHAGANY BIVENS, SHANTEEMA PALLET, KENNY FORD, PATREENA CHARLES,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT ZABKA, Individually, S.Z. ENTERPRISES, INC., AND SCOTT FETZER COMPANIES d/b/a/ KIRBY,<br><br>Defendants. | **Docket No. 3:11-cv-982 (CFD)**<br><br><br><br><br>December 8, 2011 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE SCOTT FETZER COMPANY D/B/A THE KIRBY COMPANY'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

*ORAL ARGUMENT REQUESTED*

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................ 1

II.  BACKGROUND AND PROCEDURAL HISTORY .......................................... 4

III.  ARGUMENT ................................................................................ 6

    A.  INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE AN OVERTIME CLAIM FOR THEIR INITIAL TRAINING WEEK (COUNTS TWO AND FOUR AS TO INDEPENDENT DEALERS) ................... 7

    B.  INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE A CLAIM FOR OVERTIME OR MINIMUM WAGE FOR ALL OTHER WEEKS WORKED (COUNTS ONE THROUGH FOUR AS TO INDEPENDENT DEALERS) ................................................................. 8

        1.  Outside Sales Exemption ................................................... 8

        2.  The Independent Dealer Plaintiffs Qualify for the Outside Sales Exemption ............................................................... 10

    C.  ALL PLAINTIFFS (INDEPENDENT DEALERS AND APPOINTMENT SETTERS) FAIL TO STATE A CLAIM FOR FAILURE TO PAY ALL MONEYS AND WAGES DUE (COUNT FIVE) ................................... 15

    D.  INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE CLAIMS OF FRAUDULENT MISREPRESENTATION (COUNT SEVEN) AND NEGLIGENT MISREPRESENTATION (COUNT EIGHT) ............................... 16

        1.  Plaintiffs Cannot Demonstrate That Their Reliance On Any Alleged Misrepresentation Was Reasonable ..................................... 16

        2.  Plaintiffs' Aiding And Abetting Claim Likewise Fails ..................... 18

    E.  INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE A CLAIM OF UNJUST ENRICHMENT (COUNT NINE) ......................................... 18

IV.  CONCLUSION ............................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Ackerman v. Coca-Cola Enter., Inc.,*
    179 F.3d 1260 (10th Cir. 1999) .................................................................................13

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)...............................................................................................7

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.,*
    2010 WL 1882316 (D. Conn. May 10, 2010) (Droney, J.)............................3, 16, 17

*Barth v. Champion Roofing, Inc.,*
    2011 WL 2395555 (N.D. Ill. June 10, 2011) ...........................................................12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................................7

*Christopher v. SmithKline Beecham Corp.,*
    635 F.3d 383 (9th Cir. 2011) ...................................................................................11

*Cruise v. Doyle,*
    2008 WL 116703 (S.D.N.Y. Jan. 9, 2008) ................................................................7

*Feilbogen v. AIG Trading Grp, Inc.,*
    2006 U.S. Dist. LEXIS 29184 (D. Conn. May 15, 2006) ........................................18

*Fields v. AOL Time Warner, Inc.,*
    261 F. Supp. 2d 971 (W.D. Tenn. 2003).................................................................10

*Foley v. City of Buffalo,*
    2011 U.S. Dist. LEXIS 82285 (W.D.N.Y. July 27, 2011).........................................3

*Funcia v. NYSE Grp.,*
    2007 WL 4276897 (S.D.N.Y. Dec. 3, 2007) .............................................................5

*Gold v. New York Life Ins. Co.,*
    2011 WL 2421281 (S.D.N.Y. May 19, 2011) .........................................................10

*Hodgson v. Krispy Kreme Doughnut Co.,*
    346 F. Supp. 1102 (M.D.N.C. 1972) .......................................................................12

*Jewel Tea Co. v. Williams,*
    118 F.2d 202 (10th Cir. 1941) .................................................................................12

*Lane v. Humana Marketpoint, Inc.*,
  2011 WL 2181736 (D. Idaho June 3, 2011) ........................................................10, 12, 13

*Lint v. Nw. Life Ins.*,
  2010 WL 4809604 (S.D. Cal. Nov. 19, 2010) ..................................................................14

*Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*,
  739 F. Supp. 2d 109 (D. Conn. 2010) .............................................................................18

*Meaney v. Conn. Hosp. Ass'n, Inc.*,
  250 Conn. 500 (1999) ...............................................................................................4, 18

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ......................................................................................3, 16

*Nielsen v. DeVry, Inc.*,
  302 F. Supp. 2d 747 (W.D. Mich. 2003) .........................................................10, 12, 13

*Peraro ex rel. Castro v. Chemlawn Servs. Corp.*,
  692 F. Supp. 109 (D. Conn. 1988) .................................................................................9

*Place v. Conn. Coll.*,
  2010 Conn. Super. LEXIS 2263 (Sup. Ct. Sept. 8, 2010) ..............................................18

*Puccino v. SNET Info. Servs., Inc.*,
  2011 WL 4575937 (D. Conn. Sept. 30, 2011) (Droney, J.) ...........................................16

*Saunders v. Knight*,
  2006 WL 224426 (E.D. Cal. Jan. 25, 2006) ....................................................................8

*Schmidt v. Eagle Waste & Recycling, Inc.*,
  598 F. Supp. 2d 928 (W.D. Wisc. 2009) .........................................................................10

*Sciotti v. Saint Gobain Containers*,
  2007 WL 4180737 (W.D.N.Y. Nov. 20, 2007) .................................................................7

*Starr v. Time Warner, Inc.*,
  2007 WL 4144627 (S.D.N.Y. Nov. 21, 2007) ...................................................................7

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*,
  2009 WL 1086935 (E.D.N.Y. Apr. 22, 2009) ...............................................................3, 8

*Wong v. HSBC Mortg. Corp. (USA)*,
  749 F. Supp. 2d 1009 (N.D. Cal. Sept. 29, 2010) ..........................................................14

## STATUTES

29 U.S.C. § 203(k) ..................................................................................................................9

29 U.S.C. § 207 .................................................................................................2, 7

29 U.S.C. § 213(a)(1) ...........................................................................................8

Conn. Gen. Stat. § 31-60 .................................................................................2, 7

Conn. Gen. Stat. § 31-71b .............................................................................3, 15

Conn. Gen. Stat. § 31-71c .............................................................................3, 15

Conn. Gen. Stat. 31-76b ......................................................................................9

Conn. Gen. Stat. § 31-76c ..............................................................................2, 7

Conn. Gen. Stat. § 31-76i ...............................................................................2, 9

**OTHER AUTHORITIES**

29 C.F.R. § 541.500 .......................................................................................2, 13

29 C.F.R. § 541.500(a) ........................................................................................9

29 C.F.R. § 541.502 ...........................................................................................10

29 C.F.R. § 541.700(a) ........................................................................................9

29 C.F.R. § 541.700(b) ......................................................................................10

29 C.F.R. § 541.701 ......................................................................................14, 15

Fed. R. Civ. P. 12(b)(6) ............................................................................3, 6, 7, 8

Fed. R. Civ. P. 12(c) ............................................................................................6

6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal
   Practice and Procedure § 1476 (3d ed. 2011) ..................................................11, 12

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional,
   Outside Sales and Computer Employees*, 69 Fed. Reg. 22122 (Apr. 23, 2004) .......................9

DOL, Wage and Hour and Public Contracts Divisions, Report and Recommendations of
   the Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition (Oct.
   10, 1940) ("Stein Report"), *available at* http://tinyurl.com/3qpcwx5 .....................12

DOL Wage & Hour Division Op. Ltr. No. 2007-2, 2007 WL 506575 (Jan. 25, 2007)..... 13-14, 14

# I.  **PRELIMINARY STATEMENT**

Defendant The Scott Fetzer Company d/b/a The Kirby Company ("Kirby") manufactures high-end "Kirby" brand home cleaning systems.  Kirby sells the systems to independent distributors, and the systems are then sold to consumers; Kirby does not sell vacuum cleaning systems to consumers.  Defendant S.Z. Enterprises, Inc. ("SZE"), which is owned by Defendant Scott Zabka ("Zabka"), was one such distributor.  Plaintiffs allege that they held one or both of two roles for SZE: Independent Dealer or Appointment Setter.  Independent Dealers, who were classified as independent contractors, performed product demonstrations in the homes of potential customers for the purpose of "inducing homeowners to buy" vacuum cleaners. (Amended Complaint ("Am. Compl.") ¶ 19(a) (Docket Entry 50).)  Appointment Setters worked from SZE's offices, telephoning potential customers and soliciting referrals.  (Am. Compl. ¶ 19(b).)[1]

In their Amended Complaint, all Plaintiffs claim under the FLSA (Count One) and Connecticut Wage Payment Laws ("CWPL") (Count Three) that they were denied the minimum wage set out in those statutes.  Further, all Plaintiffs allege that they are owed overtime under the FLSA (Count Two) and CWPL (Count Four).  Next, all Plaintiffs allege under the CWPL that they were not paid "all moneys and wages due" (Count Five) and not paid all wages due by the next business day after the conclusion of their employment (Count Six).  And the Plaintiffs who held the Independent Dealer position assert three claims under Connecticut common law: fraudulent misrepresentation (Count Seven), negligent misrepresentation (Count Eight), and

---

[1] Kirby has no relationship with Plaintiffs, has no knowledge of the nature of Plaintiffs' relationship with SZE and/or Zabka, and therefore denies that Independent Dealers (as that term is used in the Complaint) are or were "employees" as that term is defined by the FLSA or the Connecticut Wage Payment Law.  Kirby further denies it is a "joint employer," with SZE and/or Zabka, of Plaintiffs.  However, the Court need not reach those issues for the purposes of the instant motion.

unjust enrichment (Count Nine). Certain of Plaintiffs' claims, however, suffer from fatal defects apparent from the face of the Amended Complaint and should be dismissed.[2]

The Independent Dealer Plaintiffs' overtime claims (Counts Two and Four) as to their first week of work should be dismissed for the simple reason that they admit that they worked fewer than 40 hours during this week. (Am. Compl. ¶¶ 27-30.) The FLSA and CWPL require the payment of overtime only for hours worked *in excess of* 40 in a week. *See* 29 U.S.C. § 207; Conn. Gen. Stat. §§ 31-60, 31-76c.

The Independent Dealer Plaintiffs' overtime and minimum wage claims (Counts One through Four) as to the remainder of their alleged employment should be dismissed because Plaintiffs' own allegations plainly demonstrate that, even assuming *arguendo* that they were employees (which Kirby denies), they were exempt outside salespersons as defined by the FLSA and the CWPL. An individual qualifies for the outside sales exemption if his or her primary duty is making sales and he or she is customarily and regularly engaged away from the employer's place or places of business. See 29 C.F.R. § 541.500; Conn. Gen. Stat. § 31-76i. Here, the Independent Dealer Plaintiffs allege that they went door-to-door to customers' homes to perform product demonstrations for the purpose of inducing sales and were paid on a commission basis based on the number of products they sold. Specifically, as Plaintiffs allege, Independent Dealers performed "product promotion designed to induce homeowners to buy products from Defendants" (Am. Compl. ¶¶ 19(a), 40), and sell "door-to-door" at the customer's home (Am. Compl. ¶¶ 19(a), 34, 40). Plaintiffs' own allegations confirm that they are the quintessential

---

[2] Kirby does *not* move for judgment on the pleadings as to the following claims: the Appointment Setter Plaintiffs' claims for overtime and minimum wage under the FLSA and CWPL (Counts One through Four); the Independent Dealer Plaintiffs' claims for minimum wage under the FLSA and CWPL as to their initial week of training (Counts One and Three); and all Plaintiffs' CWPL claims for Failure To Pay Wages In a Timely Manner (Count Six). Kirby moves to dismiss all other claims in the Amended Complaint.

outside salespersons, exempt from overtime and minimum wage requirements under black letter FLSA and Connecticut law, and, as a result, have failed to state claims for overtime or minimum wage. *See Foley v. City of Buffalo*, 2011 U.S. Dist. LEXIS 82285, at *10 (W.D.N.Y. July 27, 2011) ("A complaint may be dismissed on the grounds of an affirmative defense if the defense appears on the face of the complaint.") (citations omitted); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, 2009 WL 1086935, at *5 (E.D.N.Y. Apr. 22, 2009) (granting 12(b)(6) motion to dismiss FLSA claim where complaint allegations show that plaintiff satisfies an exemption).

Plaintiffs also fail to state a claim for "failure to pay all moneys and wages due" (Count Five). Plaintiffs assert this claim under Conn. Gen. Stat. §§ 31-71b and 31-71c. But, by their terms, these statues govern only the *timing* of wage payments and do not afford Plaintiffs any *substantive* entitlement to a particular wage. *See Myers v. Hertz Corp.*, 624 F.3d 537, 546 (2d Cir. 2010). As a result, this claim must be dismissed as well.

The fraudulent misrepresentation (Count Seven) and negligent misrepresentation (Count Eight) claims of the Independent Dealer Plaintiffs both fail as well. Each cause of action requires Plaintiffs to show that they reasonably relied on an alleged misstatement of fact. *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, 2010 WL 1882316, at *6 (D. Conn. May 10, 2010) (Droney, J.). However, a plaintiff cannot establish reasonable reliance on an alleged oral statement where a plaintiff "has contracted away [his/her] ability to rely on any oral representations" made outside a written contract. *Id.* Here, Independent Dealer Plaintiffs allege that they relied upon statements promising that they would be paid a minimum of $500 per week. (Am. Compl. ¶¶ 3, 21-24, 41.) But the Independent Dealer Plaintiffs contracted away their ability to rely on representations made outside of their written contracts with SZE, which stated

-3-

that "[t]his Agreement supersedes all prior agreements, if any, between the parties, and it constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties."

Lastly, the unjust enrichment claims of the Independent Dealer Plaintiffs (Count Nine) fail because there is a valid and enforceable written contract governing their relationship with SZE, *see Meaney v. Conn. Hosp. Ass'n, Inc.*, 250 Conn. 500, 516-17 (1999), namely the independent dealer agreement that each Independent Dealer Plaintiff entered into with SZE at the start of their respective tenures.

For these reasons, and as set forth more fully below, the Amended Complaint should be dismissed in part.

## II.   BACKGROUND AND PROCEDURAL HISTORY

For purposes of this motion *only*, the following facts alleged by Plaintiffs in the Amended Complaint are accepted, *arguendo*, by Kirby to be undisputed:

1.   Defendant Kirby manufacturers high-end "Kirby" brand vacuum cleaners. (Am. Compl. ¶¶ 3, 10, 16.)

2.   Kirby vacuum cleaners are sold exclusively through authorized distributors who retain personnel to sell the Kirby products. (*Id.* at ¶ 16.)

3.   SZE, which is owned by Zabka, was a Connecticut-based distributor. (*Id.* at ¶¶ 8, 9, 16.)

4.   SZE and Zabka recruited "Independent Dealers," who solicited referrals from homeowners, distributed promotional materials door-to-door, and performed promotional product demonstrations in customers' homes for the purpose of inducing homeowners to buy the Defendants' products. (*Id.* at ¶¶ 19(a), 22, 25(a).)  Plaintiffs Ruth Dixon, Ishea Anderson-

Rodriguez, Andre Smith and Kenny Ford ("the Independent Dealer Plaintiffs") were Independent Dealers and classified as independent contractors. (*Id.* at ¶ 26.) SZE entered into contracts with each Independent Dealer Plaintiff. (*Id.* at ¶ 18(e).) In each contract, SZE and the Independent Dealer Plaintiff agreed that "[t]his Agreement supersedes all prior agreements, if any, between the parties, and it constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties." (Zabka Decl. ¶¶ 1-4, Exs. A-C.)[3]

   5.   Independent Dealers spent their "first week of work" in training, which focused on how to operate and demonstrate the "the Kirby vacuum cleaner" and sales techniques to promote the vacuum cleaners during in-home demonstrations. (*Id.* at ¶ 27.) Independent Dealers learned "the ins and outs of the Company Marketing System, including the 10-Step Demo Sequence," which was "designed to induce homeowners to buy" Kirby vacuum cleaners. (*Id.* at ¶¶ 19(a), 25(a), 26(a), 27, 28.) The Independent Dealers spent "approximately 25 hours" in this initial week of training. (*Id.* at ¶¶ 27, 29.)

   6.   The Independent Dealers were paid on a commission basis based on the number of products that they sold as a result of the in-home demonstrations. (*Id.* at ¶ 36.) "Defendants did not pay … Independent Dealers any compensation at all unless a product demonstration resulted in a sale." (*Id.* at ¶ 36.)

   7.   The Independent Dealer Plaintiffs' day-to-day duties included attending a morning staff meeting, driving to appointments, performing the 10-step product demonstration sequence

---

[3] References to "Zabka Decl., Exs.___" are to the Declaration of Scott Zabka and the exhibits attached thereto, which are copies of the Independent Dealer Agreement entered into by each Independent Dealer Plaintiff. "On a motion to dismiss, the Court may consider documents attached to the complaint or incorporated by reference, as well as other documents that are integral to the complaint, so long as the pleader has given notice of them or refers to them." *Funcia v. NYSE Grp.*, 2007 WL 4276897, at *3 (S.D.N.Y. Dec. 3, 2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Here, the Court should consider each Independent Dealer Plaintiff's Independent Dealer Agreement because Plaintiffs allege that Zabka and SZE "were required to . . . [s]ign contracts with employees . . .". (Am. Compl. 18(e).)

at customers' homes to "induce sales," and then calling the office for their next appointment. (*Id.* at ¶¶ 30, 31, 32, 33, 34.)  If another appointment was not readily available, the Independent Dealers would go "door-to-door" to "obtain the names and phone numbers of prospective customers." (*Id.* at ¶ 34.)

8. Each Independent Dealer Plaintiff sold at least one Kirby product as a result of performing the 10-step demonstration that they were taught during their training. (*Id.* at ¶ 28.)

9. SZE hired "Appointment Setters," who worked in SZE's Orange, Connecticut office. (*Id.* at ¶ 19(b).)  The Appointment Setters telephonically solicited referrals and set up appointments for Independent Dealers with potential customers based on referrals generated by Independent Dealers and "cold calling" of potential customers. (*Id.*)  Plaintiffs Ishea Anderson-Rodriguez, Mahagany Bivens, Shanteema Pallet and Patreena Charles worked as Appointment Setters. (*Id.* at ¶ 45.)

10. Plaintiffs filed their Complaint on June 20, 2011. (Docket Entry 1.)  On August 28, 2011, Kirby moved to dismiss the Complaint in its entirety. (Docket Entry 27.)  On August 29, 2011, SZE and Zabka likewise moved to dismiss the Complaint in its entirety. (Docket Entry 32.)  On October 3, 2011, Plaintiffs filed their opposition to the respective motions to dismiss (Docket Entry 51) as well as the Amended Complaint (Docket Entry 50).  On October 14, 2011, Kirby moved to withdraw its motion to dismiss the original Complaint without prejudice to file a motion to dismiss the Amended Complaint or parts thereof (Docket Entry 55) and the Court granted the motion on October 18, 2011 (Docket Entry 57).

## III.   ARGUMENT

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c) is evaluated under the same standards that apply to a FRCP 12(b)(6) motion to

dismiss for failure to state a claim. *See Sciotti v. Saint Gobain Containers*, 2007 WL 4180737, at

*6 (W.D.N.Y. Nov. 20, 2007) (citing *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert.*

*denied*, 531 U.S. 1052 (2000)).  To survive a motion to dismiss pursuant to FRCP 12(b)(6), a

complaint must contain "more than labels and conclusions" and must "raise a right to relief

above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  A

plaintiff must plead facts which "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1950 (2009).  Dismissal is warranted when a plaintiff fails to do so. *Id.*  In

addition, "[d]ismissal is proper where a plaintiff fails to plead the basic elements of a claim."

*Cruise v. Doyle*, 2008 WL 116703, at *2 (S.D.N.Y. Jan. 9, 2008).  Likewise, "bald contentions,

unsupported characterizations, and legal conclusions are not well-pleaded allegations and will

not defeat a motion to dismiss." *Starr v. Time Warner, Inc.*, 2007 WL 4144627, at *2 (S.D.N.Y.

Nov. 21, 2007).

## A.  <u>INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE AN OVERTIME CLAIM FOR THEIR INITIAL TRAINING WEEK (COUNTS TWO AND FOUR AS TO INDEPENDENT DEALERS).</u>

At the outset, the Court should dismiss the Independent Dealer Plaintiffs' overtime

claims under the FLSA and the CWPL as to their first week of work with SZE because these

Plaintiffs concede that they worked less than 40 hours during this week.  The FLSA and CWPL

require the payment of overtime for hours worked in excess of *forty hours* in a workweek.  *See*

29 U.S.C. § 207 ("no employer shall employ any of his employees … for a workweek longer

than forty hours unless such employee receives compensation … in excess of the hours above

specified at a rate not less than one and one-half times the regular rate at which he is employed");

Conn. Gen. Stat. §§ 31-60, 31-76c ("[n]o employer … shall employ any of his employees for a

workweek longer than forty hours, unless such employee receives remuneration for his

employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed").

In the Amended Complaint, Plaintiffs divide the work of the Independent Dealers into two time periods: (i) "their first week of work," which they allege was spent in training on sales techniques and Kirby products (Am. Compl. ¶¶ 27, 29); and (ii) all other weeks of work "[a]fter the week of training was complete" (*id.* at ¶¶ 28, 30).   But the Independent Dealer Plaintiffs admit that their "first week of work" was "spent entirely on training" and that this training lasted "approximately 25 hours."  (Am. Compl. ¶ 27; *see also id.* at ¶ 29.)  Therefore, the Independent Dealer Plaintiffs' overtime claims should be dismissed as to their first week of work because they admit that they worked fewer than forty (40) hours during that week.

**B.  <u>INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE A CLAIM FOR OVERTIME OR MINIMUM WAGE FOR ALL OTHER WEEKS WORKED (COUNTS ONE THROUGH FOUR AS TO INDEPENDENT DEALERS).</u>**

A plaintiff fails to state a claim for overtime and/or minimum wage where the allegations contained in the complaint reveal that plaintiff's duties satisfy an exemption from overtime and/or minimum wage requirements. *See Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, 2009 WL 1086935, at *5 (E.D.N.Y. Apr. 22, 2009) (dismissing FLSA claim under Fed. R. Civ. P. 12(b)(6) where the allegations on the face of the complaint show that the employee at issue satisfies an exemption); *Saunders v. Knight*, 2006 WL 224426, at *2 (E.D. Cal. Jan. 25, 2006) (dismissing FLSA claim under 12(b)(6) where "an affirmative defense appears on the face of the complaint") (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

**1.  Outside Sales Exemption**

The FLSA's outside sales exemption exempts "any employee employed . . . in the capacity of an outside salesman" from minimum wage and overtime requirements.  29 U.S.C. §

213(a)(1).[4]  The legislative history of the FLSA indicates that the section 13(a)(1) exemptions to

the minimum wage and overtime requirements, including the outside sales exemption, were

premised on the belief that exempt workers were presumed to enjoy other compensatory

privileges and because the type of work that they performed was difficult to standardize to any

time frame and could not be easily spread to other workers after 40 hours in a week.  *See*

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside*

*Sales and Computer Employees*, 69 Fed. Reg. 22122, 22124 (Apr. 23, 2004) (the "Final Rule").

According to the legislative history, the difficulty in standardizing such exempt work would

make compliance with the overtime provisions difficult and would generally preclude the

potential job expansion intended by the FLSA's time-and-a-half overtime premium.  *Id.*

The FLSA's implementing regulations define "outside salesperson" as one "(1) [w]hose

primary duty is . . . making sales within the meaning of section 3(k) of the Act . . . and (2) [w]ho

is customarily and regularly engaged away from the employer's place or places of business in

performing such primary duty." 29 C.F.R. § 541.500(a).  As to the exemption's first element,

the term "sale" is broadly defined to "include[] any sale, exchange, contract to sell, consignment

for sale, or other disposition." 29 U.S.C. § 203(k).  The "primary duty" does not turn on the

amount of time spent on certain tasks, but rather refers to "the principal, main, major or most

important duty that the employee performs." 29 C.F.R. §§ 541.500(a), 541.700(a).  While the

amount of time spent on exempt work "can be a useful guide," time is "not the sole test" and

"nothing ... requires that exempt employees spend more than 50 percent of their time performing

---

[4] Connecticut law incorporates the FLSA outside sales exemption. *See* Conn. Gen. Stat. § 31-76i ("The provisions of sections 31-76b to 31-76j, inclusive, shall not apply with respect to ... any person employed in the capacity of outside salesman as defined in the regulations of the Federal Fair Labor Standards Act."); *see also Peraro ex rel. Castro v. Chemlawn Servs. Corp.*, 692 F. Supp. 109, 117 (D. Conn. 1988) ("the FLSA became the yardstick by which the term 'outside salesman' would be construed").

exempt work." 29 C.F.R. § 541.700(b). A commission-based pay structure is strong evidence that "sales" is an individual's primary duty. *See Schmidt v. Eagle Waste & Recycling, Inc.*, 598 F. Supp. 2d 928, 936 (W.D. Wisc. 2009) ("Plaintiff's sales duties were more important than any of her other duties because they had a direct impact on her compensation and they were a significant component of her daily activities."); *Gold v. New York Life Ins. Co.*, 2011 WL 2421281, at *3 (S.D.N.Y. May 19, 2011) ("He was paid *solely* on commission – if he did not make any sales, he would not be paid."); *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 757 (W.D. Mich. 2003) ("Compensation based wholly or in significant part on commissions correlates with a finding that the employee does sales work"); *Lane v. Humana Marketpoint, Inc.*, 2011 WL 2181736, at *6 (D. Idaho June 3, 2011) (exempt where commissions constituted 2/3 of earnings).

An individual satisfies the exemption's second element, requiring that the sales be made "away from the employer's place or places of business," where the individual is responsible for "selling door-to-door, at the customer's home." 29 C.F.R. § 541.502; *see also Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971, 972 (W.D. Tenn. 2003) (plaintiffs sold cable services "door-to-door"); *Lane*, 2011 WL 2181736, at *6 (outside sales employees conducted sales pitches at customer's homes).

### 2.   The Independent Dealer Plaintiffs Qualify for the Outside Sales Exemption.

Here, the Independent Dealer Plaintiffs' allegations plainly establish that they satisfy each element of the outside sales exemption. As to the first element, the Amended Complaint establishes that the primary duty of the Independent Dealer Plaintiffs was making sales within the meaning of the FLSA because these plaintiffs "playacted a scripted product promotion designed to induce homeowners to buy products from Defendants." (Am. Compl. ¶ 19(a); *see also id.* at ¶¶ 26(a), 32, 40; Compl. ¶ 34 (Plaintiffs spent time "trying to induce sales to particular

homeowners through the 10-Step Demo")[5].)  Indeed, the Independent Dealer Plaintiffs spent

their "first week of work" in training on sales techniques generally and on the products they

would be demonstrating for customers; for instance, Plaintiffs were taught "the ins and outs of

the Company Marketing System, including the 10-Step Demo Sequence" (Am. Compl. ¶ 27),

"how to use the vacuum cleaner as an upright" (*id.* at ¶ 27(g)); and "how to explain the

difference between canister, hand portable, upright, and straight suction vacuum cleaners during

a product promotion" (*id.* at ¶ 27(c)).  The Independent Dealer Plaintiffs were paid on a

commission basis, *i.e.*, they were not paid "any compensation at all unless a product

demonstration resulted in a sale."  (*Id.* at ¶ 36).

    As to the second element, Plaintiffs performed their primary duty "away from the

employer's place of business" by performing their demonstrations "designed to induce

homeowners to buy" (Am. Compl. ¶ 19(a)) exclusively at customers' homes (*id.* at ¶ 40).  Not

surprisingly, then, the Independent Dealer Plaintiffs "drove to [] appointments" at customers'

houses (*id.* at ¶ 31) and went "door-to-door … to obtain the names and phone numbers of

prospective customers" (*id.* at ¶ 34).

    In short, the "door-to-door consumer-product sales" performed by the Independent

Dealers is the "archetypal business[] envisaged by the FLSA" for the outside sales exemption to

apply, *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 398 (9th Cir. 2011), and the

Independent Dealer Plaintiffs thus qualify for the outside sales exemption.

---

[5] In an attempt to avert dismissal, Plaintiffs omit from the Amended Complaint certain factual allegations contained in the original Complaint.  However, Plaintiffs cannot retract factual allegations made in a complaint by omitting them from a subsequently-filed complaint.  6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 1476 (3d ed. 2011) ("allegations in a pleading that has been withdrawn may be allowed into evidence as an admission of the party").

Plaintiffs make several meager attempts to plead around the obvious conclusion that they are exempt outside salespeople. Each attempt is wholly unavailing.

<u>First</u>, Plaintiffs assert (Am. Compl. ¶ 27) that the Independent Dealers did not "ma[k]e sales" because they "had no independent authority, no discretion to deviate from the script, to negotiate a price for Kirby products, or consummate a sale" (*id.* at ¶ 27). But this argument fails because the exemption applies even where sales activities are controlled and monitored. *See Barth v. Champion Roofing, Inc.*, 2011 WL 2395555, at *1 (N.D. Ill. June 10, 2011) (exempt where plaintiff "had little discretion when it came to recommending the particular type of work to be done for customers"); *Nielsen*, 302 F. Supp. 2d at 758 (exempt where plaintiffs were provided "scripts for speaking with prospective students and detailing how to perform the job"); *see also Jewel Tea Co. v. Williams*, 118 F.2d 202, 204 (10th Cir. 1941) (exempt where plaintiffs received training and were taught a "five-point sale" method to employ when speaking with customers); *Lane*, 2011 WL 2181736, at *8 ("requiring that employees meet certain quotas or report their activities does not defeat an outside sales exemption finding"); *Hodgson v. Krispy Kreme Doughnut Co.,* 346 F. Supp. 1102, 1106 (M.D.N.C. 1972) (exempt where plaintiffs were required to report to a supervisor on an almost daily basis and regularly meet with supervisors).

Moreover, whether an employee "makes sales" for purposes of the outside sales exemption depends on whether "the employee, in some sense, has made sales." *See Final Rule*, 69 Fed. Reg. at 22162; *see also* DOL, Wage and Hour and Public Contracts Divisions, Report and Recommendations of the Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition at 45 (Oct. 10, 1940) ("Stein Report"), *available at* http://tinyurl.com/3qpcwx5 (stating that the DOL's outside sales exemption should cover those who "in a practical sense, … are salesmen in that their activities are of the same nature as those of persons making sales

within the meaning of section 3(k)").  Here, the Amended Complaint plainly establishes that, at

the very least, and regardless of whether they were required to follow a script, the Independent

Dealer Plaintiffs "in some sense" made sales by performing in-home product demonstrations for

the sole purpose of inducing customers to purchase Kirby vacuums, with the success or failure of

their efforts determining whether the Independent Dealer Plaintiffs received pay.  (Am. Compl.

¶¶ 19(a), 28, 36, 37, 38, 40.)

Second, the Independent Dealer Plaintiffs challenge whether making sales was their

"primary duty" by citing certain additional tasks, such as "attend[ing] mandatory two-hour

morning staff meetings six mornings a week" (Am. Compl. ¶ 30), "spend[ing] hours each day

attending meetings and waiting for appointments" (*id.* at ¶ 31), and "soliciting referrals" (*id.* at ¶

39(d)).  However, contrary to Plaintiffs' assertion, this is <u>exempt</u> work because it is plainly

"incidental to and in conjunction with" the Independent Dealer Plaintiffs' own sales or

solicitations and "furthers the employee's sales efforts." 29 C.F.R. § 541.500 (incidental work

that qualifies as exempt outside sales work includes deliveries, writing sales reports, planning

itineraries and attending sales conferences); *see also Lane*, 2011 WL 2181736, at *9 ("[i]t is

clear that the most important duty that Plaintiffs performed was sales," even though they also

engaged in "marketing efforts," "a three-week training course on selling Defendant's products"

upon hire, and "several sales training meetings throughout their employment"); *Nielsen*, 302 F.

Supp. 2d at 750 (outside salespeople spent the first month of their employment in training on

various aspects of sales and received audio tapes and workbooks on sales methods); *Ackerman v.

Coca-Cola Enter., Inc.*, 179 F.3d 1260, 1266 (10th Cir. 1999) ("Because the plaintiffs

consummated sales of Coca-Cola products at the stores they visited, the work that they

performed in promoting those sales is 'incidental to and in conjunction with' those sales"); DOL

-13-

Wage & Hour Division Op. Ltr. No. 2007-2, at 4 (Jan. 25, 2007) (real estate associates' calls to prospective buyers, inspecting model units, meeting with independent realtors, "shopping" the competition, and attending sales training programs attendant to associates' own sales is exempt work).

Third, the Independent Dealer Plaintiffs challenge (Am. Compl. ¶¶ 30, 31) whether they worked "away from the employer's place of business," alleging that they "were required to, and often did, spend hours each day attending meetings and waiting for appointments in the Orange office." However, the outside sales exemption requires only that Independent Dealers be "customarily and regularly" engaged away from the employer's place of business, which is "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Indeed, courts have found that individuals who spend as little as 10-20% of their time outside of the office satisfy this prong. *See, e.g., Wong v. HSBC Mortg. Corp. (USA)*, 749 F. Supp. 2d 1009, 1011 (N.D. Cal. Sept. 29, 2010) ("customarily and regularly" prong is satisfied so long as the employee performs primary duty of sales away from a fixed site "on a greater than occasional basis"); *Lint v. Nw. Life Ins.*, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010) (employee who was out of the office making sales calls 10-20% of the time was exempt under the outside sales exemption); DOL Opinion Letter 2007-2, 2007 WL 506575 (Jan. 25, 2007) (employees met the customarily and regularly test when they were in the field one or two times per week for one to two hours per day).

Here, Plaintiffs candidly admit that a typical day for an Independent Dealer involved attending a meeting at the Orange office in the morning and travelling door-to-door to solicit new customers and perform product demonstrations with the goal of inducing sales. (Am. Compl. ¶¶ 30, 34, 36, 40.) These admissions establish that the Independent Dealer Plaintiffs

were engaged away from the employer's place of business on a "greater than occasional" basis. 29 C.F.R. § 541.701.

In sum, because the pleadings establish that the Independent Dealer Plaintiffs satisfy the outside sales exemption, they fail to state a claim for overtime and minimum wage under federal and state law.  Accordingly, Counts One through Four of the Amended Complaint should be dismissed as to the Independent Dealer Plaintiffs.

## C.   ALL PLAINTIFFS (INDEPENDENT DEALERS AND APPOINTMENT SETTERS) FAIL TO STATE A CLAIM FOR FAILURE TO PAY ALL MONEYS AND WAGES DUE (COUNT FIVE).

In their Fifth Count (Am. Compl. ¶¶ 73-80), Plaintiffs assert a claim for "Failure To Pay All Moneys and Wages Due" under Conn. Gen. Statute § 31-71b and § 31-71c.  As an initial matter, to the extent Plaintiffs assert a claim as to *timing* of wage payments under the Fifth Count, it should be dismissed because it is duplicative of the Sixth Count, which asserts a claim for "Failure To Pay Wages In A Timely Manner."  (Am. Compl. ¶¶ 81.)  Indeed, both the Fifth Count and the Sixth Count allege violations of Conn. Gen. Stat. § 31-71c.  (*Compare* Am. Compl. ¶ 77, *with* Am. Compl. ¶ 81.)

To the extent Plaintiffs use the Fifth Count to assert a right to payment of wages in a certain amount, this claim should be dismissed because the statutes Plaintiffs invoke pertain only to the timing of wage payments and do not, in and of themselves, provide any substantive right to any particular *amount* of wages.  *See* Conn. Gen. Statute § 31-71b ("Weekly payment of wages . . . (a) Each employer, by himself, his agent or representative, shall pay weekly all moneys due each employee on a regular pay day . . ."); Conn. Gen. Statute § 31-71c. ("Payment of wages on termination of employment . . . (a) Whenever an employee voluntarily terminates his employment, the employer shall pay the employee's wages in full not later than the next regular pay day . . . (b) Whenever an employer discharges an employee, the employer shall pay

the employee's wages in full not later than the business day next succeeding the date of such

discharge."). Therefore, Plaintiffs have failed to state a claim for "all moneys and wages due"

and Count Five should be dismissed. *See Myers*, 624 F.3d at 546 ("doubtful . . . that [New York

timing of wage payment statute] is the appropriate vehicle to seek the overtime pay to which

plaintiffs claim to be entitled" because the statute "by its terms only involves the timeliness of

wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a

*particular* wage") (emphasis in original); *Puccino v. SNET Info. Servs., Inc.*, 2011 WL 4575937,

at \*7 (D. Conn. Sept. 30, 2011) (Droney, J.) (no "independent statutory" claim under

Connecticut wage statute, which "does not create a substantive right in the plaintiffs, but rather

provides remedial protection") (citation and internal quotation omitted).

## D.  INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE CLAIMS OF FRAUDULENT MISREPRESENTATION (COUNT SEVEN) AND NEGLIGENT MISREPRESENTATION (COUNT EIGHT).

In the Seventh and Eighth Counts, respectively, the Independent Dealer Plaintiffs assert

claims for fraudulent misrepresentation (Am. Compl. ¶¶ 82-84) and negligent misrepresentation

(*id.* at 85-86). Plaintiffs further allege that Kirby aided and abetted fraudulent misrepresentation

and negligent misrepresentation allegedly committed by Zabka and SZE. (*Id.* at 84). These

claims fail as a matter of law.

### 1.  Plaintiffs Cannot Demonstrate That Their Reliance On Any Alleged Misrepresentation Was Reasonable.

"The essential elements of an action in fraud are (1) that a false representation was made

as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3)

that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his

injury." *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, 2010 WL 1882316, at \*6 (D.

Conn. May 10, 2010) (Droney, J.). "The plaintiff must also demonstrate that its reliance on the

misrepresentation was reasonable or justifiable." *Id.* "To state a claim for negligent misrepresentation, the plaintiff must demonstrate that (1) defendant supplied false information in the course of business, (2) defendant supplied such information for the guidance of plaintiff in its business, (3) plaintiff justifiably relied upon the information, (4) the false information caused pecuniary loss to the plaintiff, and (5) defendant failed to exercise reasonable care or competence in communicating or obtaining the information." *Id.* at *7. As with a claim for fraudulent misrepresentation, to state a claim for negligent misrepresentation "[t]he plaintiff must also allege and prove that the reliance on the alleged misstatement was reasonable." *Id.* A plaintiff cannot show reasonable reliance on alleged oral statements where a plaintiff has "contracted away its ability to rely on any oral representations" outside a written agreement. *Id.* at *6.

Here, Independent Dealer Plaintiffs cannot establish reasonable reliance because each has "contracted away [his/her] ability to rely on any oral representations." *Aviamax Aviation Ltd.*, 2010 WL 1882316, at *6. Plaintiffs allege that they relied upon oral statements made during job interviews that they would receive a "minimum payment of $500 per week" along with similar statements allegedly made in advertisements. (Am. Compl. ¶¶ 3, 21-24, 41.) However, each Independent Dealer Plaintiff entered into a written contract with SZE (Am. Compl. ¶ 18(e)) agreeing that "[t]his Agreement supersedes all prior agreements, if any, between the parties, and it constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties." (Zabka Decl. ¶¶ 1-4, Exs. A-C.) Accordingly, as the Independent Dealer Plaintiffs "contracted away" their ability to rely on representations made outside the contract, the alleged representations that Plaintiffs point to in their Amended Complaint legally cannot satisfy the reasonable reliance element of their fraud or unjust enrichment claims and these claims accordingly should be dismissed. *Aviamax Aviation Ltd*, 2010 WL 1882316, at *6.

    2.     **Plaintiffs' Aiding And Abetting Claim Likewise Fails.**

Without an underlying fraud or negligent misrepresentation claim to sustain them, the aiding and abetting claim against Kirby cannot survive. *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010) (reasoning that a claim for aiding and abetting depends upon the existence of a valid underlying tort). Accordingly, this claim should be dismissed as a matter of law as well.

## E.   INDEPENDENT DEALER PLAINTIFFS FAIL TO STATE A CLAIM OF UNJUST ENRICHMENT (COUNT NINE).

In the Ninth Count (Am. Compl. ¶¶ 87-90), the Independent Dealer Plaintiffs assert a claim of unjust enrichment. Specifically, the Independent Dealer Plaintiffs allege that "Defendants' deception with respect to the minimum compensation promises made to the Independent Dealer Plaintiffs . . . enabled Defendants to benefit from the Independent Dealer Plaintiffs' long and intense hours of work," but "Defendants have unjustly failed to provide this benefit to the Independent Dealer Plaintiffs." (*Id.* at ¶¶ 87-88.) However, a claim for unjust enrichment should be dismissed where a valid and enforceable written contract governs the parties' relationship. *See Meaney v. Conn. Hosp. Assoc., Inc.*, 250 Conn. 500, 516-17 (1999); *see also Place v. Conn. Coll.*, 2010 Conn. Super. LEXIS 2263, at *10-11 (Sup. Ct. Sept. 8, 2010); *Feilbogen v. AIG Trading Grp, Inc.*, 2006 U.S. Dist. LEXIS 29184, at *34-36 (D. Conn. May 15, 2006).

Here, the Independent Dealer Plaintiffs entered into valid and enforceable contracts governing their relationships with SZE, namely the Independent Dealer Agreements that each signed. (Zabka Decl. ¶¶ 1-4, Exs. A-C.) As a result, Plaintiffs have failed to state a claim for unjust enrichment and Count Nine should be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Kirby's motion for partial judgment on the pleadings and dismiss (i) Counts Two and Four as to the Independent Dealer Plaintiffs' initial week of work; (ii) Counts One through Four as to all other weeks worked by the Independent Dealer Plaintiffs; and (iii) Counts Five, Seven, Eight and Nine in their entirety.

Dated: December 8, 2011                          Respectfully submitted,

                                                 /s Patricia Reilly
_____

                                                 Patricia Reilly (ct08352)
                                                 LITTLER MENDELSON
                                                 265 Church Street, Suite 300
                                                 New Haven, Connecticut 06510
                                                 (203) 974-8700

                                                 Matthew W. Lampe (phv04039)
                                                 JONES DAY
                                                 222 East 41st Street
                                                 New York, New York 10017
                                                 (212) 326-3939

                                                 *Attorneys for Defendant*
                                                 *The Scott Fetzer Company*
                                                 *d/b/a The Kirby Company*

NYI-4417556v1

## CERTIFICATION

I hereby certify that on December 8, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


   /s/ Patricia Reilly
Patricia Reilly CT08352